UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X

JOHN JOHNSON, a.k.a. TODD
BRUNSON,

                     Petititoner,

          - against -

BRIAN FISHER,

                     Respondent.

----------------------------------------------------X

NOT FOR PUBLICATION
**MEMORANDUM AND ORDER**

04-CV-5120 (CBA)

AMON, UNITED STATES DISTRICT JUDGE

      Petitioner John Johnson seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Johnson was convicted in 2001 of possession of stolen property in the fifth degree under New York Penal Law § 165.40 and burglary in the second degree under Penal Law § 140.25(2), and was sentenced to concurrent terms of one year and twenty-one years to life, respectively. In his petition, Johnson contends that his waiver of his constitutional right to a jury trial was invalid.

      **I.**      **Background**

      On October 18, 2000, two police officers observed Johnson break into the home of Reverend Edmund Der and his wife Margaret Der at 3303 148th Street in Queens, New York. After exiting the house, Johnson was stopped by the officers and found to be carrying jewelry belonging to the Reverend and Mrs. Der.

      On May 31, 2001, Johnson appeared in the Supreme Court of the State of New York with counsel for a hearing pursuant to People v. Sandoval, 34 N.Y.2d 371 (1974), during

1

which the court explained the process of jury selection, the instructions the court would give prospective jurors regarding the prosecution's burden of proof, and Johnson's right to be present during the process. After an off-the-record conference with Johnson, his attorney informed the court that Johnson wanted to waive his right to be tried by a jury. The court advised Johnson that he had an absolute right to a trial by a jury of twelve of his peers, and explained that in such a trial the prosecution would have to convince all twelve jurors of Johnson's guilt, whereas in a bench trial the prosecution would only have to convince one person of Johnson's guilt. Johnson acknowledged that he understood the difference between a jury trial and a bench trial, and that he would be giving up "safety in numbers" by proceeding with a bench trial, but stated that he no longer was sure that he wanted to waive his right to a jury trial. (Tr. 20, May 31, 2001.). The court advised Johnson not to waive his right, if he had any doubts, and then allowed him to think about his decision over the weekend.

On Monday, June 4, 2001, Johnson's counsel informed the court that Johnson had decided to waive his right to a jury trial and submitted a written waiver which Johnson had signed the day before on Riker's Island. Johnson stated that he had discussed the written waiver with his attorney and confirmed that the signature on the jury waiver form was his. He acknowledged that he was giving up his right to a jury trial of his own free will and that no one had forced, threatened, or coerced him to sign the waiver. The court again conducted a colloquy with Johnson during which the court assured itself that Johnson understood the nature of his right to a jury trial, the consequences of waiving that right, and that Johnson had not been forced or coerced into signing it. The court found the waiver to be knowing, intelligent, and voluntary and ordered the case to proceed as a bench trial.

At the conclusion of the trial, the court found Johnson guilty of burglary in the second degree and possession of stolen property in the fifth degree. On June 25, 2001, the court sentenced Johnson as a persistent violent felony offender to terms of twenty-one years to life imprisonment for the burglary charge and one year for the possession of stolen property count. The court ordered the terms to be served concurrently with a sentence of sixteen years to life imprisonment that Johnson had already received in another case.

Johnson appealed his conviction on the ground that his written waiver was invalid under New York state law because it had been signed on Riker's Island with counsel instead of in open court before the judge. On July 21, 2003, the Appellate Division unanimously affirmed Johnson's conviction on the ground that Johnson had not preserved his objection to the waiver for appellate review because he had not raised the objection with the trial court, in violation of New York Criminal Procedure Law § 470.05(2) which requires parties preserve issues for appellate review by raising contemporaneous protests in the trial court. People v. Brunson, 762 N.Y.S.2d 509, 510 (N.Y. App. Div. 2003). Ruling in the alternative, the court concluded that Johnson's claim was without merit because, although the waiver had not been signed in open court, "the entire colloquy concerning the waiver took place in open court" and the trial court had ensured Johnson was aware of the consequences of waiving his right. Id. Johnson's application for leave to appeal to the New York State Court of Appeals was denied on October 8, 2003. People v. Brunson, 100 N.Y.2d 641 (2003). Johnson filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on November 24, 2004.

## II.     Discussion

Johnson was convicted of burglary in the second degree and possession of stolen

property in the fifth degree after waiving his right to a jury trial. In the first claim asserted in his petition, Johnson argues that the waiver of his right to a jury trial was invalid because "my lawyer urge[d] me to sign a waiver on Sunday in Riker's Island and told me if I take a jury trial the judge would give me conservative time which [enables] me to a fair trial." (Petition ¶ 12.A, Oct. 20, 2004) The second ground essentially repeats this claim, alleging that Johnson's attorney "force[d]" him to sign the waiver and told him that the judge would be lenient in sentencing as a result of the waiver. (Id, ¶ 12.B.) Out of deference to Johnson's *pro se* status, the Court interprets his petition broadly, and construes it to raise two claims: (1) that his jury trial waiver violated New York's constitution and criminal procedure laws; and (2) that the waiver violated his rights under the Sixth Amendment to the United States Constitution because it was not knowingly, intelligently, and voluntarily made.

    A.    State Law Claims

To the extent that Johnson argues that his waiver of his right to a trial by a jury did not meet the requirements of the New York State Constitution or New York's Criminal Procedure Law, because he signed the waiver on a Sunday in Riker's Island and not in court in the presence of a judge, the claim is not cognizable on habeas review. The federal writ of habeas corpus is available "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Knapp v. Leonardo, 46 F.3d 170, 178 (2d Cir. 1995). Therefore, Johnson's claims regarding alleged violations of state law may not be heard in these proceedings. See Estelle v. McGuire, 502 U.S. 62, 67–68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

B. Federal Claims

To the extent that Johnson argues that his waiver of his right to a trial by a jury violated the Sixth and Fourteenth Amendments to the United States Constitution, the claim has not been exhausted and in any event is without merit.

1. Exhaustion

Under 28 U.S.C. § 2254(b), the Court may not grant a writ of habeas corpus to any petitioner who has not exhausted the remedies available in state court. 28 U.S.C. 2254(b)(1)(A). A claim has been exhausted once it has been "fairly presented" to the state courts. Picard v. Connor, 404 U.S. 270, 275 (1971); Smith v. Duncan, 411 F.3d 340, 349 (2d Cir. 2005). "In order to have fairly presented his federal claim to the state courts the petitioner must have informed the state court of both the factual and the legal premises of the claim he asserts in federal court." Daye v. Attorney Gen. of New York, 696 F.2d 186, 191 (2d Cir. 1982); see also Jackson v. Edwards, 404 F.3d 612, 618 (2d Cir. 2005).

In this case, although both Johnson and the State have claimed that Johnson's state court remedies are exhausted, it is clear from the record that the state courts were never presented with, and never decided, the claim that Johnson's jury trial waiver violated the United States Constitution.[1] On direct appeal, Johnson attacked the waiver only on the ground that it did not meet the requirements of state law. (See generally Gill Decl., Ex. A,

---

[1] The State's failure to raise exhaustion as a defense does not prevent the Court from considering the issue *sua sponte*. See 28 U.S.C. § 2254(b)(3) ("A state shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement"); Granberry v. Greer, 481 U.S. 129, 134 (1987) (holding that when State fails to raise meritorious nonexhaustion defense in district court, it is "appropriate for the court of appeals to take a fresh look at the issue"); Washington v. James, 996 F.2d 1442, 1448 (2d Cir. ) (citing generally Granberry, 481 U.S. 129) (holding appellate court could raise procedural default issue *sua sponte*).

Brief for Defendant-Appellant (arguing waiver invalid because signed out of court, in violation of New York constitutional and procedural law).) The sole mention of federal law in Johnson's appellate brief is in a string citation ending the introductory paragraph of the brief's "Argument" section, which includes the Sixth and Fourteenth Amendments to the United States Constitution among the authorities cited. (See Gill Decl., Ex. A, Brief for Defendant-Appellant at 9 (citing U.S. Const. amends. VI, XIV; N.Y. Const. Art. I, §§ 2, 6; N.Y. Crim. P. Law § 320.10).) The brief makes no argument based on the United States Constitution, and does not again mention any federal legal authority. Although the Second Circuit has held that a mere citation to federal authority can be sufficient to alert state courts to the federal nature of a claim, see, e.g., Davis v. Strack, 270 F.3d 111, 122 (2d Cir. 2001) ("[I]f a petitioner cites to specific provisions of the U.S. Constitution in his state court brief, the petitioner has fairly presented his constitutional claim to the state court."); Jones v. Vacco, 126 F.3d 408, 413–14 (2d Cir. 1997) ("Citing a specific constitutional provision or relying on federal constitutional precedents alerts state courts of the nature of the claim."), the single citation in this case fell below even that low threshold and was insufficient to present Johnson's federal claim. In Davis, the sole argument in the petitioner's appellate brief followed a heading which alleged a deprivation of "due process" and cited to the United States Constitution. Davis, 270 F.3d at 122. In Jones, the petitioner's appellate brief clearly asserted that the trial court had denied him of his "constitutional right to counsel" and directed the state courts to the relevant Supreme Court precedents. Jones, 126 F.3d at 414. In Reid v. Senkowski, 961 F.2d 374 (2d Cir. 1992), the petitioner's *pro se* supplemental brief on appeal "framed the first question . . . as 'whether appellant's right to due process of law was violated by the trial court's refusal' to provide a missing witness jury charge" and cited the

Fourteenth Amendment of the United States Constitution. Id. at 376. In all of these cases, the Second Circuit found that the petitioners had adequately alerted the state courts to the federal basis for their claims because the petitioners' briefs had framed the issues in constitutional terms. In this case, by contrast, Johnson's appellate brief framed the question presented on appeal exclusively and specifically in terms of state law, asking "[w]hether appellant's purported waiver of his right to a jury trial was invalid, since he signed a written waiver, at his attorney's urging, at Riker's Island on a Sunday, rather than in open court before a judge, as both the State Constitution and C.P.L. § 320.10 require." (Gill Decl., Ex. A, Brief for Defendant-Appellant at 2.) The entirety of the brief was addressed to this question and exclusively discussed whether the procedural requirements of state law had been met. The single citation to the United States Constitution, in a string citation in an introductory paragraph, thus was insufficient to "fairly present" the legal basis for Johnson's federal claim to the state courts.[2] See Jones, 126 F.3d at 413 ("[T]he basic requirement remains that the nature or presentation of the claim must have been likely to alert the court to the claim's

---

[2] Furthermore, even if Johnson's appellate brief could be said to have "fairly presented" his claim of constitutional error to the Appellate Division, Johnson did not ask the New York Court of Appeals to review this claim, and thus did not exhaust the claim by presenting it to the highest state court. Grey v. Hoke, 933 F.2d 117, 120–21 (2d Cir. 1991). Johnson attached his appellate brief to his application for leave to appeal, but did not specify whether he sought review of a specific claim raised in the brief, or all claims. (Gill Decl., Ex. D, Letter to Chief Judge Kaye, July 29, 2003.) Johnson's subsequent letter to the Court of Appeals in support of his application exclusively argued his state law claim, stating "This case presents a novel issue as to the import of the specific requirement of the New York Constitution and C.P.L. § 320.10 that a jury waiver must be in writing and signed in open court before a judge." (Gill Decl., Ex. E, Letter to Judge Graffeo, Aug. 25, 2003.) Thus, to the extent Johnson could be deemed to have raised a federal claim in his initial appeal, he abandoned that claim by not pursuing it before the Court of Appeals. Grey, 933 F.2d at 120. Nor could the claim be deemed technically exhausted, since the Appellate Division did not decide it on its merits and Johnson remains able to raise it in a motion under § 440.10 of New York's Criminal Procedure Law.

federal nature." (quotation marks omitted)). Moreover, Johnson's appellate brief did not make any mention whatsoever of his current contention that his lawyer had told him the judge would grant him "conservative time" if he signed the waiver, and thus did not present the factual basis for his claim that his waiver of his constitutional right to a trial by jury was not knowing, intelligent or voluntary. Thus, because Johnson did not present "both the factual and the legal premises" of his claim to the state courts, he did not exhaust the claim.[3] Daye v. Attorney Gen. of New York, 696 F.2d 186, 191 (2d Cir. 1982); see also Duncan v. Henry, 513 U.S. 364, 365 (1995) ("If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution"). The Court therefore is barred from granting habeas relief on the unexhausted claim.

2.      Dismissal or Denial

A court presented with an unexhausted claim for habeas relief may either deny the claim on its merits, 28 U.S.C. § 2254(b)(3), or dismiss the claim without prejudice to it being refiled after the petitioner has exhausted his or her state court remedies. Dismissal without prejudice is appropriate when a petitioner has presented a colorable claim for relief which the interests of comity and federalism suggest should be presented first to the state courts and then reviewed by the federal courts if relief has not been granted. See Granberry, 481 U.S. at 134. On the other hand, denial on the merits is appropriate when the claim plainly is without

---

[3] In addition, the New York Court of Appeals has held that a claim that a defendant's waiver of his right to a jury trial "was not knowing and voluntary implicates his relationship with his trial attorney and is to be proved, if at all, by facts outside the trial record in a proceeding maintainable under [New York Criminal Procedure Law §] 440.10," and not on direct appeal. People v. Johnson, 51 N.Y.2d 986, 988 (1980). Johnson has not filed any motion pursuant to § 440.10, and remains free to pursue his claim in such a proceeding.

8

merit and judicial resources would needlessly be wasted by allowing additional rounds of litigation in state and federal courts. Id. In this case, it is clear that Johnson's claim is without merit and that dismissal without prejudice would be of little value to him. Therefore, the Court denies the claim on the merits.[4]

3.  Merits

Johnson's claim is without merit because the trial transcript clearly shows that Johnson's waiver of his Sixth Amendment right to a trial by a jury was knowingly, intelligently, and voluntarily given.

The United States Constitution provides criminal defendants with a right to a trial by a

---

[4] If the Court dismissed Johnson's unexhausted claim, he would be able to exhaust his state court remedies but then unable to refile the claim in federal court because of the one-year statute of limitations imposed by the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See 28 U.S.C. § 2244(d)(1). AEDPA provides, in relevant part, that any petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 must be filed within a one-year limitations period that begins to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The limitations period is tolled during the pendency of any "application for State post-conviction or other collateral review," 28 U.S.C. § 2244(d)(2), but not during the pendency of a federal habeas petition, Duncan v. Walker, 533 U.S. 167, 181–82 (2001). In this case, the limitations period began to run more than a year ago, on January 6, 2004, when Johnson's time in which to seek a writ of certiorari to the Supreme Court of the United States expired and his conviction became final for purposes of § 2244(d)(1). See Williams v. Artuz, 237 F.3d 147, 151 (2d Cir. 2001) (holding limitations period for state prisoners begins to run only after expiration of time for seeking certiorari to Supreme Court). Johnson has not filed any other application for state post-conviction or collateral review. Thus, the one-year AEDPA limitations period for claims relating to Johnson's 2001 conviction has already expired, and Johnson would be unable to refile his claim in federal court after exhausting his state court remedies.

Although a district court can in some cases mitigate the effects of the AEDPA limitations period by staying proceedings on exhausted claims while the petitioner returns to state court to exhaust an unexhausted claim, the Supreme Court has held that this procedure "should be available only in limited circumstances" when the prisoner can show good cause for his or her failure to exhaust the claims first in state court and the district court finds the claims are not "plainly meritless." Rhines v. Weber, 544 U.S. 269, 276–78 (2005) (citing 28 U.S.C. § 2254(b)(2)). In this case, Johnson has not presented any cause, good or otherwise, for his failure to exhaust his state court remedies and the claim is plainly meritless. Therefore, the Court may not employ the "stay and abeyance" procedure of Zarvela and Rhines.

jury. U.S. Const. art. III, § 2; Id. amend. VI. The Fourteenth Amendment to the Constitution extends this right to defendants being prosecuted in state court. Duncan v. Louisiana, 391 U.S. 145, 149 (1968). A defendant may waive the right to a jury trial, however, so long as the waiver is knowingly, intelligently and voluntarily given. Adams v. United States ex rel. McCann, 317 U.S. 269, 275 (1942); Patton v. United States, 281 U.S. 276, 312 (1930); McMahon v. Hodges, 382 F.3d 284, 289–90 & n.7 (2d Cir. 2004). A criminal defendant's waiver of a constitutional right is knowing and intelligent if it is "done with sufficient awareness of the relevant circumstances and likely consequences." Brady v. United States, 397 U.S. 742, 748 (1970). As the Supreme Court has explained, "[t]he law ordinarily considers a waiver [of a constitutional right] knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply *in general* in the circumstances—even though the defendant may not know the *specific detailed consequences* of invoking it." United States v. Ruiz, 536 U.S. 622, 629–30 (2002) (citing Colorado v. Spring, 479 U.S. 564, 573–74 (1987)). The voluntariness of the waiver "can be determined only by considering all of the relevant circumstances surrounding it." Brady, 397 U.S. at 749. The burden of establishing that the waiver was not knowing or voluntary falls on Johnson, who must show "essential unfairness...not as a matter of speculation but as demonstrable reality." Adams, 317 U.S. at 281.

Johnson suggests that his waiver of his right to a jury trial was not knowing, intelligent, or voluntary because his attorney allegedly "urge[d] and force[d]" him to sign the waiver and told him that if he waived his jury trial right "the judge would give me conservative time which [enable] me to a fair trial." (Petition ¶ 12.) This claim is not supported by the record and is without merit. Johnson first informed the court that he wished

to waive his right to a jury trial at a pre-trial conference held on May 31, 2001, a Thursday. The trial court conducted a colloquy with Johnson in which it explained that Johnson had "an absolute right" to a trial by a jury, and that such a trial presented "safety in numbers" because the prosecution would have to convince twelve individuals of Johnson's guilt in a jury trial but only one individual in a "judge trial." (Tr. 20, May 31, 2001.) Johnson stated that he understood the difference between jury and bench trials, but equivocated as to whether he truly wished to waive his right to a jury trial, stating "Well, he's telling me to do this. I don't know what to do now. Everybody is — everything has been thrown on me so fast." (Id. at 21.) The court then advised Johnson to proceed with a jury trial if he had any doubts about waiving that right, and directed Johnson to discuss the issue with his attorney—cautioning Johnson not to "sign any piece of paper or do anything unless you are convinced it's the right thing because it's your trial, it's not the lawyer's trial." (Id.) The court allowed Johnson to defer decision on the issue until the following Monday, when jury selection was scheduled to begin.

On that Monday, Johnson's attorney informed the court that he had met with Johnson over the weekend and that Johnson had decided to waive his right to a jury trial and had signed a waiver form. The court again conducted a colloquy with Johnson, in which Johnson clearly and unequivocally stated that it was his signature on the waiver form, that nobody had forced, threatened, or coerced him into waiving his right to a trial by jury, and that he had discussed the "pros and cons" of his decision with his attorney and understood the right he was giving up. (Tr. 3–5, June 4, 2001.) Johnson reiterated his understanding that the prosecution would have to convince twelve people beyond a reasonable doubt in a jury trial, but just one person in a bench trial, and stated that nobody had told him what the judge's

11

verdict would be.  (Id. at 4–5.)  Finally, Johnson stated that he had made his decision with the advice of counsel.  (Id. at 5.)  After the prosecution indicated its consent, the court found Johnson's waiver to be knowing, intelligent, and voluntary, and ordered the case to proceed without a jury.

The record thus shows that Johnson's waiver of his right to a trial by jury was knowing and intelligent.  Johnson clearly understood that prosecutors would have to convince twelve individuals of his guilt in a trial by jury, but only one judge in a bench trial.  He also stated that he did not know what the judge's verdict would be.  Finally, he stated that he had been advised by counsel regarding the waiver.  Johnson thus plainly understood the nature of the right he was giving up and how it would apply in the circumstances of his case, and his waiver was therefore knowing and intelligent.  Ruiz, 536 U.S. 622, 629-630 (2002).

The record also establishes that Johnson's waiver was voluntary.  The Supreme Court has stated that "[s]olemn declarations in open court carry a strong presumption of verity.  The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."  Blackledge v. Allison, 431 U.S. 63, 74 (1977).  The record in this case shows that Johnson repeatedly stated in open court that nobody had forced, threatened, or coerced him into waiving his right to a trial by jury. (Tr. 3–5, June 4, 2001.)  Johnson's vague and conclusory allegations that his attorney "urged" or "forced" him to sign the waiver, unsupported by any specifics, are insufficient to overcome the presumption of verity which attaches to his in court statements.

Johnson's allegation that his attorney advised him that if he waived his right to a jury trial "the judge would give me conservative time which [enable] me to a fair trial," does not

12

render his waiver involuntary. First, the Second Circuit has held that a guilty plea—which includes within it a waiver of the right to trial by jury—will not be held involuntary on the ground that it was induced by defense counsel's mistaken estimate of a judge's likely sentence. <u>Seiller v. United States</u>, 544 F.2d 554, 568 (2d Cir. 1975); <u>United States ex rel. Scott v. Mancusi</u>, 429 F.2d 104, 108 (2d Cir. 1970); <u>Padilla v. Keane</u>, 331 F. Supp. 2d 209, 217 (S.D.N.Y. 2004); <u>see also</u> <u>United States ex rel. Curtis v. Zelker</u>, 466 F.2d 1092, 1098 (2d Cir. 1972) (stating defendant's subjective expectations for sentencing insufficient to invalidate plea). Thus, even if Johnson's counsel had advised him that the judge would likely give him "conservative time" if he waived his right to a jury trial, this would not render Johnson's waiver invalid and would not entitle him to the writ. Second, the possibility that Johnson reasonably believed the judge had *promised* to be lenient is foreclosed by the record, which shows that the judge unequivocally stated that he did not even know if he would return a verdict of guilt, noted that Johnson faced a possible sentence of life in prison, and encouraged Johnson *not* to waive his right to a jury trial. (Tr. 21–22 & 33, May 31, 2005; Tr. 5, June 4, 2001.)

Instead, the record suggests that Johnson waived his right to a jury trial because he believed it would provide him with a fairer trial under the specific facts of his case and increase his chances of acquittal. Even Johnson's habeas petition suggests that he waived his right to a jury trial because he wanted a "fair trial." (Pet. ¶ 12.) The complaining witnesses in the case were a reverend and his wife, while the defense had no witnesses other than the accused, a convicted felon. The trial transcript shows that Johnson's attorney was concerned that a jury might accord the reverend's testimony undue weight because of his occupation, and sought to limit or exclude any mention of the reverend's occupation and to prevent the

13

reverend from wearing his collar in court. (Tr. 31–34, May 31, 2001.) Conversely, the attorney also was concerned that information about Johnson's numerous prior burglary convictions would come out at trial and convince the jury that Johnson had a propensity to commit the burglary with which he was charged. (Tr. 31, June 4, 2001.) Given these circumstances, Johnson's attorney could reasonably have advised that waiving the right to a trial by jury might result in a fairer trial, and such advice would render the waiver only more knowing, intelligent and voluntary, not less so.

### III. Conclusion

For the reasons stated above, the Court concludes that Johnson has not exhausted his state court remedies with regard to his claim that he did not knowingly, intelligently, and voluntarily waive his right to a trial by jury, in violation of the United States Constitution. The Court nevertheless denies the claim on its merits, rather than dismissing the claim without prejudice to being refiled later, because it is clear that the claim is entirely without merit. A certificate of appealability will not be issued because Johnson has failed to make a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(e)(2). The Clerk of the Court is instructed to enter judgment in accordance with this Order and to close the case.

SO ORDERED.

Dated: Brooklyn, New York
July 10, 2006

_
Carol Bagley Amon
United States District Judge